For the reasons hereinbefore stated the judgment of the United States Customs Court is *reversed*.

UNITED STATES *v.* WHEELER & MILLER (No. 4447)[1]

---

[1] C. A. D. 280.

United States Court of Customs and Patent Appeals, May 22, 1944

*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks*, special attorney, of counsel), for the United States.
*Lawrence & Tuttle* for appellee.

[Oral argument April 4, 1944, by Mr. Weeks and Mr. Tuttle]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges[2]

BLAND, Judge, delivered the opinion of the court:

During the year 1940 a shipment of "Danish Loaf Cheese" from Denmark was entered at the port of San Francisco. The collector classified it as dutiable for customs purposes under paragraph 710 of the Tariff Act of 1930 as "Cheese" and assessed the same with duty at 7 cents per pound. The importer protested the said classification and assessment of duty, claiming the merchandise to be dutiable at 5 cents per pound under the provisions of said paragraph 710 as modified by the trade agreement with Finland, T. D. 48554, 70 Treas. Dec. 369, as "Cheese having the eye formation characteristic of the Swiss or Emmenthaler type." In the President's letter accompanying the proclamation of the trade agreement, the rates of duty in said agreement were made applicable to the products of Denmark.

The United States Customs Court, Third Division, sustained the protest, and the Government has appealed from its judgment so doing.

The provisions of the statute and of the said trade agreement with which we are here concerned are as follows:

### Paragraph 710, Tariff Act of 1930

Cheese and substitutes therefor, 7 cents per pound, but not less than 35 per centum ad valorem.

### Trade agreement with Finland

| Tariff Act of 1930 paragraph | Description of articles | Rate of duty |
|---|---|---|
| 710 | Cheese having the eye formation characteristic of the Swiss or Emmenthaler type; * * *. | 5¢ per lb., but not less than 20% ad val. |

At the trial below it was conceded that the merchandise involved is the same as that which was passed upon in 1941 by the United

[1] Lenroot, Judge, sat during the argument of this case but resigned before the opinion was prepared.

States Customs Court in protest No. 5930–K, *Wheeler & Miller* v. *United States*, 6 Cust. Ct. 252, C. D. 475. The evidence in the record in that case, including the exhibit (illustrative exhibit A) and the testimony of two witnesses for the importer, was offered and accepted in evidence in the instant case, whereupon the importer rested its case. The Government introduced the testimony of three witnesses, and in rebuttal the importer introduced the testimony of one witness.

Illustrative exhibit A consists of a photograph of a cross section of a cake of the cheese here involved, with a ruler placed against the same for the purpose of showing the size of the cheese and the size of the eye formation. In width, the cheese is substantially 10½ inches across and slightly over 3 inches thick. The larger eyes, more than a dozen showing in the picture, are for the most part irregularly located in the center of the cheese. Around the entire edge of the same there are no eyes. The frequency of the appearance of the eyes decreases toward the edge. The largest eyes shown in the picture would seem to be about ⅛ inch in diameter and are irregularly spaced from ⅛ inch to about 1 inch apart. The interior of the eye has a shiny, slick appearance.

The trial court reviewed the evidence at great length. In much of the testimony there was agreement between the witnesses on both sides. In other respects there was a sharp conflict between the witnesses for the importer and those for the Government. The trial court, while holding in substance that it was not bound by the testimony in determining the meaning of the words in controversy, felt called upon to review it since Government counsel argued "so strenuously that the record now before the court establishes that the imported cheese does not have the eye formation characteristic of Swiss or Emmenthaler cheese."

The testimony having been thoroughly discussed and much of it quoted by the trial court and by the Government in its brief (no brief was filed in this court for the importer), no extended recital here of the statements of each of the witnesses is deemed necessary.

With reference to the testimony, the trial court said:

Much of the testimony introduced by the defendant relates to a comparison of the eye formation in the imported cheese with the large eyes found in the center of first-grade Swiss or Emmenthaler cheese, but the framers of the provision in the trade agreement did not make the eyes in the first-grade Swiss or Emmenthaler cheese or the large eyes in the center of such cheese the test to be applied. The provision is broad enough to refer to the eyes in any grade of Swiss or Emmenthaler cheese * * *.

We are in agreement with the above quotation.

The court further said:

Some of the testimony is directed also to a comparison of the eyes in the imported cheese herein involved with the eyes in *imported* Swiss or Emmenthaler cheese,

but the framers of the provision in the trade agreement did not specify that the cheese must have the eye formation characteristic of *imported* Swiss or Emmenthaler cheese to come within the provision which is broad enough to refer to the eyes in American Swiss cheese. * * *. [Italics quoted.]

With the latter statement we agree.

The testimony, while not binding upon the court under the circumstances at bar, obviously is helpful in determining the intent of the framers of the Finnish Trade Agreement. Some of the witnesses testified that in their opinion, after looking at the said photograph, illustrative exhibit A, the cheese did not have the eye formation characteristic of the Swiss or Emmenthaler type of cheese, basing opinion for the most part upon their familiarity with genuine imported Swiss or Emmenthaler cheese. The words "Swiss" and "Emmenthaler" are substantially synonymous terms, that is, Emmenthaler is a characteristic Swiss cheese and is often referred to as Switzerland cheese. It is frequently imported into the United States from Switzerland in so-called wagon-wheel or millstone form, weighing as much as 200 pounds. In the center of the best grade of such cheese there are large round eyes from ½ inch to 2½ or 3 inches in diameter, the eyes being formed in the cooking process through the effect of the gases created. Sometimes the eyes contact each other.

The record fairly shows, we think, that the witnesses who testified that the imported cheese at bar did not have the required eye formation based their opinion for the most part upon the size of the eyes and to some extent on the number of the same and also to some extent on their location and lack of irregularity. The involved cheese, as shown by the exhibit, has no eye into which another has entered. There is no doubt that the shape (except where the eyes overlap in some Swiss cheeses) and color of the eye formation of the involved cheese are identical with the shape and color of the eye formation of other cheese conceded to be of the kind provided for in the trade agreement.

The record shows that there are three grades of Swiss or Emmenthaler cheese. The Government witness, Ghiggoile, of the Bureau of Dairy Service in the Department of Agriculture, who was familiar with Swiss and Emmenthaler cheese by reason of his 5 years' experience in examining the same, testified as follows:

Q. Are there various grades of Swiss or Emmenthaler cheese?—A. Officially no, there are different grades known by the trade.

Q. You have examined those different grades?—A. We have, but we have been confined to three specific grades; that is, cheese with the characteristic holes which is known as Aniser, then the cheese with the eye formation that is the same, and then what we know as blind cheese that has no holes at all or very small holes.

We interpret the language of the witness to mean that one of the grades of Swiss cheese known to the trade as blind cheese may be a third grade of so-called Swiss cheese and it may have eyes or no eyes.

The genuine imported Swiss cheese and the best grade of Swiss cheese made in the United States have more eyes in the center than near the edge. In fact, the record shows that there are no eyes in any kind of Swiss cheese immediately near the edge. There are no eyes immediately near the edge in the instant cheese. The eyes in the instant cheese cannot be distinguished from the eyes in the cheese with which the Government's witnesses made comparison, as far as we can see, unless it is a question of the size, and possibly in some Swiss cheese the eyes are more numerous and sometimes overlap. It is common knowledge that Swiss cheese is somewhat hard and rubbery in texture and sweetish in taste. The record contains no statement by anyone that these qualities were lacking in the importation at bar.

As was held by the trial court, the framers of the paragraph in controversy made no limitation as to the size of the eye, nor did they say that the imported article should have the eye formation of either *imported* Swiss cheese or any particular quality or grade of Swiss or Emmenthaler cheese. They provided for a *type* of cheese, namely, any cheese "having the eye formation characteristic of the Swiss or Emmenthaler type." According to the record, the instant cheese compares favorably, in respects with which we are concerned here, with the cheese imported from Finland. It is inconceivable that our Government would make an agreement with Finland to let Finnish cheese in at 2 cents less per pound than was then provided for by the statute and intend to extend the provision only to imports from Finland of cheese which meets all the requirements of "genuine" Swiss or Emmenthaler cheese imported from Switzerland. If imported cheese must contain eyes which are from ½ inch to 2½ or 3 inches in diameter, it is at once apparent that no small cheeses like that at bar, slightly over 3 inches in thickness, could possibly meet the requirement. There is nothing in connection with this case that would suggest that the framers of the trade agreement contemplated that the importations from Finland should be so limited as to exclude small cheeses.

The Government calls attention to the fact that the language "having the eye formation characteristic of the Swiss or Emmenthaler type" was first used in connection with imported cheese in the Presidential proclamation, T. D. 42251, 51 Treas. Dec. 933, under the flexible tariff provisions, which increased the rate of duty on such cheese in 1927. In the Government's brief, the following language is quoted from the Tariff Commission report in connection with that proclamation:

\* \* \*. Cheese of this grade must be meaty and waxy when well cured, be free from "glaesler" or irregular development, have a fine and pleasing hazel-nut flavor, be slightly sweet in taste, and have a dry and sound rind free from mold. It must also have large oval cavities, or "eyes," varying from seven-tenths of an

inch to 1 inch in diameter, uniformly distributed, and showing an inner surface of dull luster.

The Tariff Commission was there speaking of imported Swiss cheese and stated that only the first-grade fancy American product corresponded with such imported cheese. It then stated that cheese of that grade had eyes varying from seven-tenths of an inch to 1 inch in diameter, uniformly distributed, and showing an inner surface of dull luster. This evidence conflicts with the testimony of some of the Government witnesses, because it shows that even the best grade of domestic Swiss cheese and genuine imported Swiss cheese had eyes very much smaller than those which the Government witnesses specified were necessary before it could be said that the cheese had the eye formation characteristic of the Swiss or Emmenthaler type. It seems clear that when the said proclamation was issued and when the Finnish Trade Agreement was entered into, it was not the purpose of the framers of those documents to limit the provision to the importation of so-called Swiss cheese of the higher grades but that they deliberately intended that the provision include Finnish cheese and other like cheese such as that at bar if it had the eye formation that characterized Swiss cheese, and that they never intended to make the classification of the imported article depend upon the size and irregular distribution which most often characterizes the highest grade of American-produced Swiss cheese or the imported article from Switzerland.

The Government also quotes the following, concerning Emmenthaler cheese, from the United States Department of Agriculture Bulletin No. 608 (1932) entitled "Varieties of Cheese: Descriptions and Analyses":

This is a hard, rennet cheese made from cows' milk, and has a mild, somewhat sweetish flavor. It is characterized by holes or eyes which develop to about the size of a cent in typical cheeses and are from 1 to 3 inches apart. * * *.

This information, likewise, is not in harmony with the views expressed by some of the Government witnesses.

The record as to the existence of different grades of cheese, both imported and domestic, with the eye formation of the Swiss or Emmenthaler type is not very satisfactory, but we think it fairly appears from the record before us that there are different grades of such cheese. So, we are confining our decision herein to the particular record before us. The lower court weighed the somewhat conflicting evidence, and we do not feel justified, under all the circumstances, in reversing its decision.

It is our view that the trial court arrived at the right conclusion in sustaining the protest of the importer, and its judgment so doing is *affirmed*.